**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Illinois Department of Revenue, | |
| Appellant, | Case No. 14 C 5072 |
| v. | |
| Elk Grove Village Petroleum, LLC, *et al.*, | Judge John Robert Blakey |
| Appellees. | |

**MEMORANDUM OPINION AND ORDER**

In this bankruptcy appeal, this Court must decide whether the Bankruptcy Court erred when it decided that Appellant Illinois Department of Revenue's ("IDOR") "interest" in the Debtors' property was without value and thus not entitled to "adequate protection" under Section 363(e) of the Bankruptcy Code. The IDOR's "interest" was extinguished pursuant to Section 363(f) of the Bankruptcy Code, as part of the sale of the Debtors' property during the underlying bankruptcy case. Appellee United Central Bank ("UCB")—who, along with the IDOR, are the two creditors present in this appeal—and the Chapter 11 trustee of the Debtors' estates argue that there is no reversible error. For the reasons set forth below, this Court finds that the Bankruptcy Court's decision is well-reasoned, but this Court differs in one material respect that warrants reversal.

**I.     Standard of Review**

Pursuant to 28 U.S.C. § 158(a), this Court has jurisdiction to hear appeals from the rulings of the Bankruptcy Court. On appeal, this Court reviews the

Bankruptcy Court's legal findings *de novo* and its factual findings for clear error. *In re Mississippi Valley Livestock, Inc.*, 745 F.3d 299, 302 (7th Cir. 2014). Because this appeal only challenges the Bankruptcy Court's legal decisions, this Court's review is *de novo*.

## II. Facts and Procedural History

This bankruptcy appeal arises out of the post-petition sale of substantially all the assets of jointly administered Chapter 11 bankruptcy estates for four debtors who operated five BP branded gas stations in the Chicagoland area: Elk Grove Village Petroleum, Joliet Petroleum, Oswego Petroleum and Orland Park Petroleum (each a "Debtor," and collectively, the "Debtors"). In the course of their business, the Debtors entered into loan agreements with UCB, a bank, as lender, which were secured by mortgages on the real properties upon which the gas stations operate, as well as security interests in the Debtors' personal property. The Debtors subsequently defaulted on their obligations to UCB. As a result, between December 2012 and January 2013, each Debtor filed a separate voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The Debtors' separate cases have been jointly administered since January 23, 2013, in the case captioned: *In re Elk Grove Village Petroleum, LLC*, Case No. 12 B 49658 (N.D. Ill.). Bankruptcy Dkt. 25. On April 12, 2013, in light of the Debtors' financial performance not having improved, the Bankruptcy Court appointed Eugene Crane as the Chapter 11 Trustee ("Trustee") of the Debtors' estates. Bankruptcy Dkt. 69.

2

On October 10, 2013, the Trustee, pursuant to Sections 363(b) and (f) of the Bankruptcy Code, filed a Motion to Approve Sale of Gas Stations ("Sale Approval Motion"). Bankruptcy Dkt. 158. On October 22, 2013, the IDOR filed a Limited Objection to the Sale Approval Motion ("Limited Objection"). Bankruptcy Dkt. 173. Beyond defaulting on their obligations to UCB, the Debtors also owed $1,881,648.60 in outstanding pre-petition tax liabilities to the State of Illinois. In its Limited Objection, the IDOR explained that, but for the application of Section 363(f) of the Bankruptcy Code, which permits the Trustee to extinguish "any interest" in sold property, the IDOR would have had the right to pursue any purchaser of the Debtors' gas stations personally for the Debtors' outstanding tax liabilities pursuant to 35 ILCS 5/902(d) ("Illinois Income Tax Act") and 35 ILCS 120/5j ("Retailers' Occupation Tax Act") (herein collectively referred to as the "Bulk Sales Acts").

The Bulk Sales Acts authorize the IDOR to issue a "stop order," a mechanism whereby the IDOR can instruct a purchaser to withhold a portion of the sales to cover the seller's outstanding tax liabilities and, if the purchaser does not remit the appropriate amount of withheld money to the IDOR upon demand, then the purchaser becomes personally liable to the IDOR for the seller's outstanding tax liabilities. 35 ILCS 5/902(d); 35 ILCS 120/5j. Because the sale of the Debtors' gas stations under Section 363(f) would have the effect of extinguishing the IDOR's rights under the Bulk Sales Acts to pursue the purchaser, the IDOR sought "adequate protection" from the Bankruptcy Court under Section 363(e) of the Bankruptcy Code.

On November 13, 2013, after conducting a hearing, the Bankruptcy Court entered an Order Approving Sale of Gas Stations ("Sale Order") and told the IDOR that no additional language was required in the Sale Order to preserve its interests. Bankruptcy Dkt. 191. The sale of the Debtors' gas stations was made to purchaser PAV2, LLC. In accordance with Section 363(f), the Sale Order authorized the sale "free and clear of all liens, claims, encumbrances and interests, with all liens, claims, encumbrances and interests to attach to the proceeds." The Sale Order further provided that the Trustee would hold the proceeds of the sale until further Court Order. The Trustee closed the sale of the gas stations over the next two months, and received net sales proceeds totaling $5,229,475.27.

On January 29, 2014, UCB filed a Motion for Allowance of Secured Claim and Turnover of Collateral Proceeds ("Allowance Motion"). Bankruptcy Dkt. 205. The Allowance Motion asserted claims against Debtors in the collective amount of $14,077,157.67. The Allowance Motion sought the allowance of UCB's claims against each of the Debtors, secured to the full extent of the value of the gas stations, and also requested turnover of the sales proceeds.

On March 5, 2014, the IDOR filed an Objection to UCB's Allowance Motion and an accompanying Cross-Motion for Partial Turnover of Proceeds of Sales ("Cross-Motion"). Bankruptcy Dkt. 232-33. The IDOR requested that the Bankruptcy Court order the Trustee (as "adequate protection" for the IDOR's "interest" under the Bulk Sales Acts that was extinguished by the Sale Order) to turnover sufficient funds from the sales proceeds to satisfy the Debtors' outstanding

tax liabilities. Bankruptcy Dkt. 233, IDOR's Cross Motion ¶¶ 17, 23-26, Prayer for Relief. In April 2014, the parties completed briefing on IDOR's Cross-Motion. *See* Bankruptcy Dkt. 237, 239, 244.

On May 21, 2014, the Bankruptcy Court issued a Memorandum Decision resolving UCB's Allowance Motion and the IDOR's Cross-Motion. Bankruptcy Dkt. 267. That decision has been published as *In re Elk Grove Village Petroleum*, 510 B.R. 594 (Bankr. N.D. Ill. 2014). The next day, May 22, 2014, the Bankruptcy Court entered a corresponding Order granting UCB's Allowance Motion. Bankruptcy Dkt. 271.

In its Memorandum Decision, the Bankruptcy Court found that UCB's secured claims were deemed allowed under Section 502(a) of the Bankruptcy Code in the total amount of $14,077,157.67. *In re Elk Grove Village Petroleum*, 510 B.R. at 600, 602. The Court, applying Section 506 of the Bankruptcy Code, found that UCB's claims consisted of a secured claim in the amount of $5,229,475.27 that was secured in the sale proceeds and a general unsecured claim in the amount of $8,847,682.40. *Id.* at 602. The Bankruptcy Court further found that the IDOR's claims were allowed in the amount of $1,881,648.60, consisting of priority and general unsecured claims. *Id.* at 601-02.

The Bankruptcy Court next determined that the IDOR's right under the Bulk Sales Acts to pursue the purchaser for the Debtors' outstanding tax liabilities was an "interest" extinguished by the Sale Order. *Id.* at 602-04. Despite the IDOR having lost that "interest," the Court found that the loss was without value and

thus was not entitled to "adequate protection" under Section 363(e) of the Bankruptcy Code. *Id.* at 604-05. Whether or not the IDOR could have pursued the purchaser for the Debtors' outstanding tax liabilities, the IDOR's claims were subordinate to UCB's claims in either event. *Id.* The IDOR was thus "out of the money." *Id.* at 605.

On appeal, the IDOR challenges only that portion of the Bankruptcy Court's decision concluding that its extinguished "interest" was without value and not entitled to "adequate protection" under Section 363(e). The parties do not contest the other aspects of the Bankruptcy Court's decision, such as that the IDOR's claim against the purchaser was, in fact, an "interest" as that term is used by Sections 363(e) and (f). *See In re Vista Marketing Group Ltd.*, No. 12 B 83168, 2014 WL 1330112, at *8 (Bankr. N.D. Ill. March 28, 2014) (an analogous case where the Court emphasized that it could not "readily conceive" how the purchaser of property from a Section 363 bankruptcy sale would become liable to the IDOR under the Bulk Sales Acts for the debtor's outstanding tax liabilities after that "interest" had been extinguished by Section 363(f)). Accordingly, this Court limits its discussion today to valuing the IDOR's extinguished "interest."

**III. Analysis**

The issue of first impression in this bankruptcy appeal is whether, under Section 363 of the Bankruptcy Code, the IDOR requires "adequate protection," namely, compensation, for having its statutory right under the Bulk Sales Acts extinguished. That right is the IDOR's ability to pursue the purchaser of the

Debtors' gas stations personally for the Debtors' outstanding tax liabilities. The Bankruptcy Court found that the IDOR did not require "adequate protection" because the value of the IDOR's extinguished "interest" was zero. On appeal, this Court finds that the Bankruptcy Court's decision, while well-reasoned, was incomplete in one material respect that warrants reversal. This Court begins by summarizing the relevant provisions of the Bankruptcy Code (Subsection A) and then analyzes the merits of the IDOR's appeal, valuing the IDOR's extinguished "interest" (Subsection B).

### A. Bankruptcy Code

The underlying sale of the Debtors' gas stations was conducted pursuant to Section 363 of the Bankruptcy Code. *See* Bankruptcy Dkt. 158, 191. Section 363 is the tool that allows a bankruptcy trustee to liquidate the assets of the debtor's estate, so that the proceeds of those assets can be distributed in accordance with the priorities set out in the Bankruptcy Code. Section 363(f) permits a trustee, with certain conditions not relevant here, *see* 11 U.S.C. § 363(f)(1)-(5), to extinguish any claim against those assets and sell them "free and clear of any interest in such property of an entity other than the estate." The purpose of allowing property to be sold "free and clear" of third-party interests is to maximize the property's value and thus enhance the payout made to creditors. *Precision Industries, Inc. v. Qualitech Steel SBQ, LLC*, 327 F.3d 537, 548 (7th Cir. 2003); *In re Vista Marketing Group*, 2014 WL 1330112, at *6-7; *In re USA United Fleet Inc.*, 496 B.R. 79, 83 (Bankr. E.D.N.Y. 2013); *In re Mundy Ranch, Inc.*, 484 B.R. 416, 422-23 (D.N.M. 2012).

7

When an "interest" is extinguished under Section 363(f), the holder of the extinguished "interest" has the right to seek "adequate protection" from the Bankruptcy Court under Section 363(e). *Precision Industries*, 327 F.3d at 547-48. Upon request, the Court is "obligated to ensure" that the holder's interests are "adequately protected." *Id.* at 548. Section 363(e) provides:

> Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest.

11 U.S.C. § 363(e).

Determining when it is "necessary to provide adequate protection" under Section 363(e) is guided by Section 361 of the Bankruptcy Code. Section 361 explains that the "adequate protection" required by Section 363(e) is measured by the "decrease in the value" or the "indubitable equivalent" of the interest extinguished. Section 361 states:

> When adequate protection is required under section 362, 363, or 364 of this title of an interest of an entity in property, such adequate protection may be provided by—
> (1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, sale, or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property;
> (2) providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property; or
> (3) granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

In interpreting these provisions of the Bankruptcy Code, the Supreme Court has explained that the phrase "adequate protection" was intended by Congress to prevent, during the pendency of a bankruptcy case, a loss in the value of a secured creditor's interest in property of the bankruptcy estate. *United Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 370-71 (1988); *accord In re Bovino*, 496 B.R. 492, 502 (Bankr. N.D. Ill. 2013); *In re Markos Gurnee Partnership*, 252 B.R. 712, 716 (Bankr. N.D. Ill. 1997), *affirmed*, No. 97 C 3571, 1998 WL 295507 (N.D. Ill. May 21, 1998). To protect against a loss in value under Section 361, the bankruptcy estate should compensate the creditor through cash payments, liens on other property or some other method that provides the "indubitable equivalent" of the creditor's interest. *In re Markos Gurnee Partnership*, 252 B.R. at 716; *In re Willowood East Apartments of Indianapolis II, Ltd.*, 114 B.R. 138, 146 (Bankr. S.D. Ohio 1990). As the Seventh Circuit put it, when an "interest" is extinguished, "adequate protection" demands that the interest holder "be compensated for the value of its leasehold—typically from the proceeds of the sale." *Precision Industries*, 327 F.3d at 548.

### B. Valuing the IDOR's Extinguished "Interest"

In analyzing the underlying decision, this Court begins by making explicit the Bankruptcy Court's analytical framework, *see In re Elk Grove Village Petroleum*, 510 B.R. at 598, 602, 604-05, which aligns with this Court's analysis of the Bankruptcy Code. Creditors harmed by a bankruptcy sale under Section 363 are entitled to "adequate compensation" for the "decrease in the value" of their

9

extinguished interest. 11 U.S.C. § 361. The decrease in value of that extinguished "interest" is determined by comparing two dollar amounts: (1) the creditor's recovery in bankruptcy where Section 363(f) has extinguished its "interest" in the sold property (and setting aside, for the purpose of this analysis, whether intervention under Section 363(e) is warranted), with (2) the creditor's recovery had its "interest" in the sold property not been extinguished by Section 363(f). When the creditor's recovery would have been greater had Section 363(f) not extinguished its "interest" in the sold property, then it has suffered a decrease in value, that is, a monetary loss, that requires "adequate protection" under the Bankruptcy Code. 11 U.S.C. §§ 361, 363(e); *see In re Elk Grove Village Petroleum*, 510 B.R. at 604-05. Put in context here, this Court compares: (1) the amount the IDOR stands to recover from the sale of the Debtors' gas stations in the underlying bankruptcy with (2) the amount the IDOR would have recovered had its ability to pursue the purchaser personally for the Debtors' unpaid tax liabilities not been extinguished. This Court concurs with the first half of the Bankruptcy Court's analysis, but respectfully deviates from the second half.

Beginning with the first half, the Bankruptcy Court, applying the settled principle that liens are prioritized in relative priority of date of perfection, found that UCB's liens took priority. *In re Elk Grove Village Petroleum*, 510 B.R. at 602. UCB first recorded its liens in 2006 whereas the IDOR first recorded its liens years later, in 2010 and 2011. *Id.* at 601-02. The Bankruptcy Court then considered, alternatively, whether the Bulk Sales Acts nonetheless allowed the IDOR to jump

ahead in priority. The Bankruptcy Court, however, found nothing in the operative provisions of the Bulk Sales Acts to support that outcome. *Id.* at 600-02.

Nothing the IDOR presents on appeal causes this Court to deviate from this well-reasoned analysis. Specifically, the IDOR disputes the Bankruptcy Court's bottom line conclusion that the IDOR cannot recover anything from the sales proceeds, but fails to engage, let alone rebut, the particulars of the Court's step-by-step analysis. The IDOR instead assumes that it is "entitled to be compensated," *e.g.*, [9] at 17, and [16] at 9, because the effect of the Sale Order was to free the purchaser from the fiscal obligations imposed by the Bulk Sales Acts. The premise of this assumption—that an extinguished "interest" must be worth something—is flawed. As Courts from other Districts have found when interpreting Section 363(e), an extinguished "interest" can be worth nothing. *E.g.*, *In re Gateway Access Solutions, Inc.*, 368 B.R. 428, 432-33 (Bankr. M.D. Pa. 2007); *In re Mundy Ranch*, 484 B.R. at 425-26; *In re Megan-Racine Associates, Inc.*, 192 B.R. 321, 326-27 (Bankr. N.D.N.Y. 1995). The IDOR thus has not shown that the Bankruptcy Court erred in the first part of its analysis.

Turning now to the second half of the valuation equation, the Bankruptcy Court also determined that the IDOR would not have recovered anything had the IDOR maintained the right to pursue the purchaser, because the IDOR held claims subordinate to UCB in either event. *In re Elk Grove Village Petroleum*, 510 B.R. at 605. Citing *Bjork v. United States*, 486 F.2d 934, 937-39 (7th Cir. 1973), UCB expounds on this point and argues that when a purchaser sets aside part of the

11

purchase price for taxes owed to the IDOR pursuant to a stop order issued under Bulk Sales Acts, the beneficial interest in the withheld money nevertheless transfers to the seller, even though the money remains in the purchaser's hands. As such, the seller's creditors' claims, likewise, will attach to the withheld money, in the priority set out by the Bankruptcy Code, despite their location.

While this Court concurs with this analysis as far as it goes, an additional issue warrants consideration. *See* Eamonn O'Hagan, 23 Norton Journal of Bankruptcy Law & Practice 327, 333-34 n.9 (June 2014). In this case, the issue is not limited to whether UCB held a superior claim over the money the purchaser would have been required to withhold under the Bulk Sales Acts to cover the Debtors' outstanding tax liabilities. That is because the IDOR's rights under the Bulk Sales Acts are not limited to going after just the sales proceeds, whether or not those proceeds have been transferred to the Debtors (or their bankruptcy estate) or held by the purchaser. Rather, the Bulk Sales Acts empower the IDOR also to go after the purchaser "personally" if he does not remit the amount withheld from the sale to the IDOR upon demand. The Bulk Sales Acts each contain the same relevant language:

> If the seller or transferor has failed to pay the tax, penalty, and interest due from him hereunder and the Department makes timely claim therefor against the purchaser or transferee as hereinabove provided, then the purchaser or transferee shall pay to the Department the amount so withheld from the purchase price. If the purchaser or transferee fails to comply with the requirements of this Section, the purchaser or transferee shall be personally liable to the Department for the amount owed hereunder by the seller or transferor up to the amount of the reasonable value of the property acquired by the purchaser or transferee.

> Any person who shall acquire any property or rights thereto which, at the time of such acquisition, is subject to a valid lien in favor of the Department, shall be personally liable to the Department for a sum equal to the amount of taxes, penalties and interests, secured by such lien, but not to exceed the reasonable value of such property acquired by him.

35 ILCS 5/902(d); 35 ILCS 120/5j.[1] Neither UCB nor the Trustee contest this interpretation of the Bulk Sales Acts. Nor can they.

Under the Bulk Sales Acts, had the UCB asserted a claim superior to the IDOR for the "amount so withheld from the purchase price" by the purchaser, as UCB argues it would have done, and the purchaser remitted the withheld sale proceeds to UCB and not the IDOR despite the IDOR's demand for that money, then the purchaser nevertheless still would be "personally liable to the Department for the amount owed hereunder by the seller [Debtors]." 35 ILCS 5/902(d); 35 ILCS 120/5j. That is a source of recovery separate from the sales proceeds that the IDOR can pursue. The IDOR's statutory right, therefore, has value even though UCB may have a superior claim to the sale proceeds. UCB has not asserted a superior claim over the purchaser's *personal* assets or shown that, even if it did have a superior claim, the purchaser lacked sufficient personal assets to satisfy both UCB and the IDOR's claims.

---

[1] Recognizing, of course, that they are not binding authorities here, multiple IDOR letter rulings on the topic confirm this Court's interpretation of the quoted language. 2 Ill. Admin. Code §§ 1200.110(a) and 1200.120(c); IDOR Letter, No. 96-0114, 1996 WL 699622, at *1 (Aug. 26, 1996); IDOR Letter, No. 90-0406, 1990 WL 207605, at *1 (July 5, 1990); IDOR Letter, No. 87-0624, 1987 WL 53814, at *1 (Aug. 19, 1987).

To contextualize this Court's analysis, consider a hypothetical bankruptcy sale under Section 363, with the following parameters mirroring the fact pattern here:

- the debtor was in bankruptcy for owing $150 to a creditor bank;

- pursuant to Section 363 of the Bankruptcy Code, the debtor's assets were sold for $100;

- the purchaser had net assets worth $200 after purchasing the debtor's assets;

- the debtor had outstanding state tax liabilities in the amount of $25;

- the purchaser paid $75 to the bankruptcy trustee and withheld $25 in response to the IDOR issuing a stop order pursuant to the Bulk Sales Acts;

- Section 363(f) did not extinguish the IDOR's right under the Bulk Sales Acts to pursue the purchaser for the debtor's outstanding tax liabilities; and

- the creditor bank had a superior claim than the IDOR for the $25 the purchaser withheld.

In this example, the purchaser would remit the withheld $25 to the creditor bank and not the IDOR because the creditor bank held a superior claim to the sales proceeds and despite the IDOR's demand. Yet the IDOR would not be left without recourse. The Bulk Sales Acts provide another source of funds from which the IDOR can recover the debtor's outstanding tax liabilities. The Bulk Sales Acts empower the IDOR to hold the purchaser personally liable up to the value of the assets purchased ($100 in this example) and recover the unpaid taxes from the purchaser's personal assets (worth $200 in this example) which are not subject to any claim by the creditor bank. That is a valuable source of recovery.

This Court can end its discussion here, but nonetheless addresses two remaining issue for completeness. First, the Bankruptcy Court, citing 810 ILCS 5/9-201(a), found that, just as the IDOR had lost its ability to pursue the purchaser of the gas stations for the transferred property, "that is a right that all secured creditors whose liens are not released would have." *In re Elk Grove Village Petroleum*, 510 B.R. at 605. Section 5/9-201(a), however, does not address the key issue of personal liability. Had the Bulk Sales Acts not authorized the IDOR to pursue the purchaser personally, the result here may have been different.

Second, the parties raise competing equities to persuade this Court to reach their favored outcome, but these arguments do not get the parties far. UCB argues that it relinquished its right to foreclose on the Debtors' gas stations by consenting to the bankruptcy sale. Had UCB chosen to foreclose instead of consenting to a Section 363 sale in bankruptcy, then the parties do not dispute that the Bulk Sales Acts would not have applied and that the IDOR could not have collected the unpaid taxes. The IDOR counters that the purchaser paid a higher price for the Debtors' gas stations than the purchaser otherwise would have had it been potentially liable to the IDOR for the Debtors' unpaid taxes. This Court has no reason to doubt that the course of the underlying proceedings would have been different if the issues here already had been resolved. But neither party's policy concerns justify interpreting the Bankruptcy Code in a way that overrides the text of Sections 361 and 363. *Cf. Pacific Operators Offshore, LLP v. Valladolid*, 132 S. Ct. 680, 690 (2012). Nor is either party's worst case scenario supported by anything other than

15

anecdotal commentary and speculation. Future creditors will weigh the risks and benefits of choosing to proceed or not with a bankruptcy sale under Section 363 when, as here, the debtor has outstanding tax liabilities. UCB agreed to have the Debtors' gas stations sold in bankruptcy, and this Court must interpret the Bankruptcy Code accordingly.

In the same vein, UCB points to a 14 year old "General Information" letter from the IDOR that expressed the IDOR's former position that the Bulk Sales Acts did not apply to the sale of assets in bankruptcy. The letter states:

> … it is the position of the Department that a sale of assets conducted under the auspices of a bankruptcy code is not subject to the bulk sales reporting requirements of the Retailers' Occupation Tax Act. We believe the Bankruptcy Code preempts the bulk sales provision of the Retailers' Occupation Tax Act.

IDOR Letter, No. 01-0066, 2001 WL 416722, at *2 (March 30, 2001). This Court does not find UCB's reliance on this General Information letter persuasive. The Administrative Code specifically states that General Information letters "do not constitute statements of agency policy" and "may not be relied upon by taxpayers in taking positions with reference to tax issues." 2 Ill. Admin. Code § 1200.120. In fact, the letter at issue here contained such a warning in its first paragraph:

> The nature of your letter and the information you have provided require that we respond with a General Information Letter, which is designed to provide general information, is not a statement of Department policy and is not binding on the Department.

IDOR Letter, No. 01-0066, 2001 WL 416722, at *1 (March 30, 2001). Because such letter rulings are not binding on the IDOR, the Illinois Supreme Court rejected a prior attempt by a taxpayer who contested the IDOR's positional change on a

16

separate tax issue. *Kean v. Wal-Mart Stores, Inc.*, 919 N.E.2d 926, 936-37 (Ill. 2009). UCB can fare no better than the taxpayer in *Kean* did.

In sum, this Court finds that the IDOR had a valuable "interest" that was extinguished (unless perhaps the purchaser would have been rendered insolvent by the IDOR pursuing it personally—a factual question that has not been raised on appeal). Consequently, this valuable "interest" is entitled to "adequate protection" under Section 363(e) of the Bankruptcy Code.

**IV. Conclusion**

This Court vacates the Bankruptcy Court's May 21, 2014 Memorandum Decision (Bankruptcy Dkt. 267) and May 22, 2014 Order (Bankruptcy Dkt. 271) to the extent inconsistent with this Court's Memorandum Opinion and Order. This case is remanded for proceedings consistent with this Opinion. In remanding, this Court notes that it has not calculated the value of the IDOR's extinguished "interest other than to say that the IDOR was not "out of the money."

Dated: September 30, 2015

Entered:

*[signature]*
_____
John Robert Blakey
United States District Judge